UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Luckenson Dorceant

v.                                    Civil No. 13-cv-353-JD
                                      Opinion No. 2015 DNH 024
United States of America

O R D E R

Luckenson Dorceant, who is proceeding pro se, moves pursuant
to 28 U.S.C. § 2255, to vacate his sentence, alleging ineffective
assistance of counsel.[1]  The government filed an objection to the
motion to vacate.  In response, Dorceant filed an affidavit in
further support of his motion to vacate.[2]

Standard of Review

To succeed on a motion to vacate sentence under § 2255, the
moving party must show that his sentence was imposed in violation
of the Constitution or federal law, that the court lacked
jurisdiction, that the sentence exceeded the statutory maximum,
or that the sentence "is otherwise subject to collateral attack."
§ 2255(a).  In response to a § 2255 motion, the court must
determine whether a hearing is required to resolve the issues
raised or whether the motion, along with the record and the file

---

[1]Counsel was appointed to represent Dorceant in this case.
Dorceant, however, asked the court to dismiss counsel, and
representation was terminated.

[2]Dorceant was granted additional time to file a response to
the government's objection.

in the case, conclusively show that the moving party is not entitled to relief.  § 2255(b).  The court takes sworn factual allegations as true "'unless those allegations are merely conclusory, contradicted by the record, or inherently incredible.'"  Owens v. United States, 483 F.3d 48, 57 (1st Cir. 2007) (quoting Ellis v. United States, 313 F.3d 636, 641 (1st Cir. 2002)); see also Miller v. United States, 564 F.2d 103, 105-06 (1st Cir. 1977).

## I.   Hearing

Dorceant asks the court to conduct an evidentiary hearing on his claims.  In the context of claims of ineffective assistance of counsel, courts have held that a hearing is not necessary unless a habeas petitioner raises a plausible claim.  Morales v. United States, 635 F.3d 39, 45 (2d Cir. 2011); United States v. Morrison, 98 F.3d 619, 625-26 (D.C. Cir. 1996).  A plausible claim of ineffective assistance of counsel means a colorable showing on both prongs of the test under Washington v. Strickland, 466 U.S. 668 (1984).  Perez v. United States, --- F. App'x ---, 2014 WL 7272262, at *1 (2d Cir. Dec. 23, 2014).

As is explained in detail below, Dorceant has not shown a colorable claim of ineffective assistance of counsel.  As presiding judge during the entirety of the criminal case, I am familiar with those proceedings and the evidence.  The amended motion to vacate the sentence with appendices, the government's objection with appendices, Dorceant's affidavit, and the record

2

from Dorceant's criminal case show, conclusively, that Dorceant
is not entitled to the relief he seeks.   Therefore, a hearing on
Dorceant's claims is not necessary.

## II.   Background

### A.   Factual Background

The testimony and evidence at trial established that the
charges against Dorceant arose from events that led to the death
of Mally Cruz Rodriguez on November 26, 2008, in Salem, New
Hampshire.   In mid-November of 2008, Mally Cruz Rodriguez
("Mally") recruited her twin sister, Nelly Cruz Rodriguez
("Nelly"), to smuggle drugs from Puerto Rico to the Dominican
Republic to make money.   Mally told Nelly that she, Mally, had
recently successfully engaged in a similar smuggling operation.
Nelly agreed to join the plan.

On November 17, 2008, Mally and Nelly met with Sandy Brito
("Sandy") and Sandy's brother-in-law in a white SUV parked in
front of the Rodriguezes' house in Puerto Rico.   Nelly testified
that Sandy offered $5,000 in payment if she would swallow 100
capsules containing drugs in the Dominican Republic and then
travel back to Puerto Rico, transporting the drugs internally.
Sandy's brother-in-law said that the internal smuggling process
was safe and that he had recently smuggled drugs that way
himself.   Mally and Nelly agreed to go to the Dominican Republic
to participate in the drug smuggling.

3

Mally then recruited another woman, Yomaira Arias Cordero ("Yomaira"), to smuggle drugs.  Yomaira met with Mally and then with Mally, Sandy, and Sandy's brother-in-law, who was introduced to her as "Lucky", in a white SUV across the street from Mally's house.  Sandy said that Yomaira would swallow 100 "eggs" of drugs and that Lucky owned the drugs.  Yomaira said that she was told she would be paid $4,000 if she swallowed all 100 "eggs".  At trial, Yomaira identified Dorceant as "Lucky".

On November 19, 2008, Yomaira, Mally, and Nelly were driven to San Juan by Sandy's father, Justo Rodriguez ("Justo").  At the ferry port, Sandy gave them tickets that had been purchased with a debit card for Dorceant's account.  They then traveled by ferry to the Dominican Republic.  After a few days, they all met at Sandy's mother's house where the drugs had been packaged for swallowing.  Mally swallowed forty-three capsules; Nelly swallowed fifty capsules; and Yomaira swallowed twenty-eight.

On November 25, instead of returning to Puerto Rico, according to the plan, they were told they were going to fly to Boston, Massachusetts, where they would meet someone named "Nino."  Dorceant directed his girlfriend, Dionaliz Brito ("Dionaliz"), who is Sandy's sister, to buy plane tickets for Mally, Nelly, and Yomaira to fly from the Dominican Republic to Boston, and Dionaliz used Dorceant's account to buy the tickets.  Dorceant's account was also charged for a plane ticket for Sandy to fly to Boston.

4

Dorceant bought Dionaliz a ticket to fly to Boston using the same account that was used for the other tickets, and she arrived several hours before the others.  Dionaliz was met by Manuel Perez ("Nino") who came in a taxi driven by Escalito Suero ("Suero").  Nino was a friend of Dionaliz's and Sandy's father, Justo.  Suero and Nino stopped at a Wal-Mart where Dionaliz bought a telephone and then continued on to a motel in Salem, New Hampshire.  Nino and Suero rented a room for Dionaliz.  Dionaliz called Dorceant when she arrived.

Mally, Nelly, Yomaira, and Sandy arrived in the early morning hours of November 26 and were also met by Nino and Suero. They were taken to the motel in Salem where Sandy rented a room for himself and a room for Mally, Nelly, and Yomaira.  Nino and Suero bought laxatives that Mally, Nelly, and Yomaira took to expel the capsules.  Nelly and Yomaira began expelling capsules, but Mally did not and became ill.

Nelly sought help from Sandy, and Sandy and Dionaliz came to Mally's room.  Sandy tried to help Mally and told Nelly he would call the police.  Instead of calling the police, however, Sandy called Nino to pick him up, along with Dionaliz and Yomaira. Sandy took all of the expelled capsules of cocaine and luggage belonging to Mally and Nelly.  Sandy left Nelly with the telephone Dionaliz had purchased at Wal-Mart and a small amount of money.

After the others left, Nelly went to the motel office, and the staff called the police.  Officers from the Salem Police and

Fire Departments arrived and gave medical aid to Mally, who was unconscious. Mally was transported to a hospital where she was pronounced dead. Additional Salem police officers were called after evidence of drugs was found at the motel and in response to Mally's death.

At first, Nelly did not tell the police about transporting the drugs, but she did tell the full story later in the day. Nelly was taken to the hospital where the capsules were removed, and Nelly was arrested.

When Sandy, Yomaira, and Dionaliz left the motel, Dionaliz called Dorceant who told her to watch the news to see what had happened to Mally and to tell Sandy to call Nino. Dorceant told Dionaliz to stay in Boston to collect the money from the cocaine sales. He also told her he had reported that his credit card had been stolen in order to hide his involvement in buying their plane tickets.[3] Sandy called Justo to get a ticket to fly back to Puerto Rico. Later that day, Sandy flew from Boston to Puerto Rico, leaving Yomaira behind to expel the remaining cocaine. Nino took Dionaliz and Yomaira to his apartment in Lawrence where Yomaira expelled the remaining capsules. Nino sold the drugs and gave Dionaliz $6,000.

---

[3]The card for Dorceant's account is identified as both a debit and a credit card. Any inconsistency is not material to the issues in this case.

6

Yomaira stole money from Dionaliz to get back to Puerto Rico.  Justo traveled to Boston to help Dionaliz get back to Puerto Rico.

After his arrest in Florida on March 2, 2010, Dorceant denied being involved in drug smuggling.  Dorceant agreed to speak to Special Agent Thomas Pugliese, United States Immigration and Customs Enforcement.  Dorceant told Special Agent Pugliese that he sold clothing in Puerto Rico and traveled between Miami and Puerto Rico for that purpose and that he shipped the white SUV to Puerto Rico to sell.  He also said that he had traveled to Miami and Boston with a girlfriend, Dina Aguilera, to shop and eat.  When asked about the plane tickets, Dorceant said that he authorized purchasing tickets for Dionaliz and Sandy but not for Mally, Nelly, and Yomaira.

### B.   Procedural Background

Dorceant was arrested on charges of conspiracy to possess with the intent to distribute cocaine and charges that the use of the cocaine resulted in the death of Mally.  Counsel was appointed to represent Dorceant in the criminal proceeding.

A two count indictment was filed on April 7, 2010.  Count I charged Dorceant with conspiring with others to possess with the intent to distribute more than 500 grams of cocaine and charged that the use of the cocaine resulted in the death of Mally.  Count II charged Dorceant with conspiring to import more than 500

grams of cocaine into the United States which resulted in the death of Mally.  Dorceant was arraigned on April 22, 2010.

On May 25, 2010, Dorceant's appointed counsel moved to withdraw because Dorceant had given him an "ultimatum" as to how counsel was to conduct his defense and counsel would not and could not accede to Dorceant's demands.  The trial date was continued, and the motion to withdraw was granted.  Attorney James D. Gleason was then appointed to represent Dorceant.

Attorney Gleason filed motions to dismiss on Dorceant's behalf, and the trial date was continued again.  The motions were denied.  Trial began on December 7, 2010.  On December 9, 2010, the jury found Dorceant guilty on both counts in the indictment. In January of 2011, Dorceant filed a pro se motion to dismiss Attorney Gleason from representing him, arguing that others involved in the conspiracy were guilty but he was not and that Attorney Gleason had provided ineffective assistance.  Following a hearing, the motion to dismiss Attorney Gleason was denied.

The sentencing hearing was held on March 28, 2011, with Attorney Gleason representing Dorceant.  Dorceant was sentenced to two terms 360 months each on Counts I and II to be served concurrently.  Judgment was entered on March 29, 2011.

A Notice of Appeal was filed on March 30, 2011.  On May 2, 2012, the First Circuit issued a judgment granting appellate counsel's motion pursuant to Anders v. California, 386 U.S. 738 (1967), to withdraw from representing Dorceant.  The First Circuit noted Dorceant's pro se supplemental brief on appeal but

nevertheless summarily affirmed the judgment of this court, holding that no non-frivolous grounds existed for appeal.  The mandate issued on August 23, 2012.

Proceeding pro se, on August 5, 2013, Dorceant commenced this action by filing a motion to vacate his sentence, pursuant to § 2255.  Dorceant alleged that Attorney Gleason provided ineffective assistance of counsel.  The government moved to appoint counsel to represent Dorceant for purposes of the habeas proceeding because of the issues of attorney-client privilege and waiver of the privilege that were implicit in Dorceant's claims. The court directed the clerk to send Dorceant a financial affidavit for purposes of determining his eligibility for appointed counsel under 18 U.S.C. § 3006A(a)(2)(B).  Dorceant provided a financial affidavit, which established his financial eligibility, and the motion was granted.  Attorney Andrew Schulman was appointed to represent Dorceant.

In the meantime, Dorceant filed several pro se motions seeking discovery from the government.  Dorceant also moved, pro se, for reconsideration of the motion to appoint counsel to represent him.  All motions were stayed until the issue of representation could be resolved.

A hearing was scheduled to address the issue of representation.  Dorceant continued to make pro se filings.  A hearing was held on November 26, 2013.  The court declined to

allow hybrid representation and directed Dorceant or his counsel
to file a statement by December 12, 2013, stating Dorceant's
choice with respect to representation.  Dorceant filed a notice
that he would proceed with Attorney Schulman representing him.
The pro se motions were withdrawn, and Attorney Schulman filed an
amended motion to vacate sentence with an incorporated memorandum
of law.   Within weeks after the amended motion was filed on his
behalf, Dorceant filed a pro se motion to dismiss Attorney
Schulman from representing him.  In support, Dorceant stated that
the amended motion filed by Attorney Schulman should not be
considered by the court because it did not present his arguments
and because he did not consent to the amended motion.  A hearing
on Dorceant's motion was held on May 30, 2014.  The court ordered
Dorceant to file a notice by June 30, 2014, as to whether he
would proceed with representation by Attorney Schulman or pro se.
Dorceant chose to proceed pro se.

Proceeding pro se, Dorceant filed motions for discovery from
the government and a motion to amend the motion to vacate his
sentence.  The court allowed Dorceant's amended motion to vacate
his sentence and ordered the government to answer.  The
government filed its objection to the amended motion to vacate.
The court denied Dorceant's motions for discovery and provided
extra time for him to file a response to the government's

10

objection.  Dorceant filed his own affidavit in support of his
motion to vacate his sentence.[4]

### III.  Motion to Vacate Sentence

In his pro se amended motion to vacate his sentence (docket
number 49), Dorceant alleges that Attorney Gleason provided
ineffective assistance.  The motion lists six "grounds" of
ineffective assistance of counsel:  (1) failing to introduce
exculpatory evidence, (2) failing to properly advise Dorceant
about plea negotiations and stipulating to drug weight and the
cause of Mally's death, (3) failing to present Dorceant's request
for self-representation, (4) failing to object to the
prosecutor's closing argument, (5) failing to contest the issue
of the "use" of cocaine, and (6) failing to suppress evidence
that was seized from Massachusetts.  Doc. No. 49 at 8-9.  In the
argument section of the motion, Dorceant also contends that
Attorney Gleason should have objected to evidence of his
involvement in a prior drug smuggling operation.

The government filed an objection to the motion.  In support
of the objection, the government filed Attorney Gleason's
declaration with attached exhibits.  Dorceant then filed his own
affidavit in support of his motion to vacate.  Only the claims

---

[4]To properly support a motion to vacate sentence under
§ 2255, an affidavit must be based on personal knowledge.  See
Anderson v. United States, 762 F.3d 787, 792-93 (8th Cir. 2014).
Unsupported assertions cannot counter record evidence.  Gray-Bey
v. United States, 156 F.3d 733, 739 (7th Cir. 1998).

that were raised in the amended motion to vacate sentence (docket number 49) are considered for purposes of this proceeding.[5]

To succeed on his claims of ineffective assistance of counsel, Dorceant must show "that his attorney's performance was deficient, and that the deficient performance prejudiced his defense." Ortiz-Graulau v. United States, 756 F.3d 12, 17 (1st Cir. 2014) (citing Strickland, 466 U.S. at 687). Representation is constitutionally deficient if it fell outside the range of reasonable assistance that a competent defense attorney could be expected to provide under the "'the prevailing professional norms.'" Bucci v. United States, 662 F.3d 18, 29-30 (1st Cir. 2011) (citing Strickland, 466 U.S. at 688-89). Prejudice is shown if "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Ortiz-Graulau, 756 F.3d at 17 (quoting Strickland, 466 U.S. at 694). If the moving party "falls short in showing either deficiency or prejudice, the claim fails." Ortiz-Graulau, 756 F.3d at 17.

---

[5]To the extent Dorceant may have raised new claims or issues in his affidavit, those matters will not be considered. Federal Rule of Civil Procedure 15 governs pleading amendments in habeas proceedings. 28 U.S.C. § 2242; Mayle v. Felix, 545 U.S. 644, 654-55 (2005); United States v. Ciampi, 419 F.3d 20, 23 (1st Cir. 2005). Dorceant would need leave to amend his motion to vacate to add any new claims. Fed. R. Civ. P. 15(a)(2). He has not sought leave to amend, and leave would not be granted under the circumstances of this case.

### A.  Exculpatory Evidence

Dorceant contends that Attorney Gleason provided ineffective assistance by failing to introduce certain evidence that Dorceant claims would have been exculpatory and by failing to impeach certain witnesses' testimony.  Specifically, Dorceant argues that Attorney Gleason should have impeached Nelly and Yomaira with statements they made to the police and should have introduced evidence about the purchases of the airline tickets, telephone records showing Justo called Suero and Nino, evidence that Justo did not give money to Mally's family as Dionaliz testified, evidence that Dorceant bought a house not drugs with the proceeds of the sale of his Infinity SUV, telephone records to refute Dionaliz's testimony about calling Dorceant on the morning of November 26; and evidence from the TSA to contradict evidence that Dorceant was smuggling drugs during his trip to Boston.

### 1.  Prior Statements by Nelly and Yomaira

Dorceant contends that Nelly and Yomaira made statements to the police after they were arrested that were inconsistent with their trial testimony.  Dorceant finds a discrepancy between Nelly's initial identification of the location of her meeting with Sandy and another unidentified man as a white minivan and her testimony at trial that the meeting was in a white SUV. Dorceant also contends that Nelly's description of the unidentified man in the vehicle was inconsistent with her trial testimony.  The slight variations between the prior statement and

trial testimony that Dorceant seizes upon are so insignificant as
to make this claim frivolous.

Nelly never identified Dorceant as the other man present
during the meeting in the SUV, and Attorney Gleason focused on
that weak point in her testimony.  To the extent Dorceant argues
that Attorney Gleason should have attempted to impeach Nelly's
trial testimony with a statement she made to the police about
Sandy's involvement in drug trafficking, he does not explain how
he could benefit from introducing that statement.  Because there
was evidence of Dorceant's contact with Sandy, evidence that
Sandy was a drug dealer would be more likely to hurt than help
Dorceant.

Dorceant does not identify what previous statements Yomaira
made that were inconsistent with her trial testimony except that
she identified the vehicle used for her meeting with Sandy and
Dorceant as a white van.  Again, any inconsistency in the
description of the vehicle is inconsequential in this case.
Yomaira identified Dorceant at trial as the man present during
her meeting with Sandy in a white vehicle.

### 2. Credit Card Purchases of Tickets

Evidence and testimony at trial established that the
airplane tickets for Mally, Nelly, and Yomaira to fly from the
Dominican Republic to Boston were purchased with Dorceant's
credit card.  Dorceant acknowledges that the tickets were
purchased with his credit card but argues that Attorney Gleason

should have introduced evidence that the telephone number provided as the contact number for the reservation was registered to Justo, not to Dorceant.  The contact telephone number is inconsequential when Dorceant admits that his credit card was used to purchase tickets for Mally, Nelly, and Yomaira and other evidence at trial establishes that Dorceant bought those tickets. The evidence also showed that after Mally's death Dorceant tried to challenge the transaction as unauthorized in order to distance himself from the drug operation.

Dorceant asserts that although he bought the tickets for Dionaliz and Sandy, they later paid cash to change their reservations and that Sandy paid cash to change the reservations for Mally, Nelly, and Yomaira.  He contends that Attorney Gleason should have introduced that evidence.[6]  The evidence at trial established that all of the tickets were purchased with Dorceant's credit card and that after Mally died he reported the credit card charges were unauthorized to avoid involvement. Whether Dionaliz and Sandy paid to change the reservations does not diminish the probative value of evidence that the tickets

---

[6]Although Dorceant cites "Attachment A" to support his theory about changed reservations,  Attachment A to the amended motion to vacate consists of a supporting affidavit for an arrest warrant, part of a report of investigation by the Department of Homeland Security ICE, and pages of telephone records, none of which appear to be relevant to the issue of cash payments to change airline reservations.  Attachment A to Dorceant's initial motion to vacate is also unrelated to the airplane tickets. Attachment 2 to the amended motion to vacate includes copies of receipts for purchases of tickets and appears to be the evidence Dorceant intended to cite.

used to smuggle drugs to the United States were purchased with Dorceant's credit card.

### 3.   Telephone Records

Dorceant argues that telephone records show that Justo called Nino and Suero during the smuggling operation and that Attorney Gleason should have introduced that evidence to show that Justo was involved in the operation.   The cited telephone records would have been cumulative of other evidence at trial that showed Justo was involved in the smuggling operation.   Even if the telephone evidence would augment Justo's role, that evidence does not diminish the evidence of Dorceant's part in the conspiracy.

Dorceant also argues that evidence should have been introduced to show that Dionaliz could not have reached him by telephone from Boston on the morning of November 26, as she testified, to warn him to challenge the use of his credit card to purchase the airline tickets.   Dorceant asserts that he was in the Dominican Republic at the time Dionaliz says she talked to him and contends that his cell phone was a Florida number through "MetroPcs" that did not having roaming in the Dominican Republic. Therefore, Dorceant reasons, Dionaliz could not have talked to him.   Dorceant asserts that Attorney Gleason should have investigated the operation of the cell phone system and should

16

have introduced that evidence at trial to impeach Dionaliz's testimony about her call to Dorceant.

In Attachment C to his amended motion, Dorceant submitted a copy of lists of cell phone networks and carriers, a copy of a map of Metro PCS service in the United States, and a copy of a page from a website, "www.roamingzone.com/international" to support his theory that his cell phone with service through MetroPCS did not operate in the Dominican Republic. Dionaliz testified, however, that after they left Mally and Nelly at the motel she called Dorceant at a number in the Dominican Republic, which was a cell phone that Dorceant used in the Dominican Republic.[7] In light of the record evidence, other evidence about Dorceant's Metro PCS cell phone with a Florida telephone number would not have impeached Dionaliz's testimony. Therefore, Dorceant has not shown deficient representation or prejudice.

### 4. Miscellaneous

Dorceant also argues briefly that Attorney Gleason should have impeached Dionaliz's testimony that she asked to have the drug money sent to Mally's family with evidence that the money was not given to the family. He also contends that Attorney

---

[7]Dorceant confuses a call Dionaliz made to him at a Florida area code when she first arrived in Boston with the call made after Mally became ill. Dionaliz testified that she made the later call to Dorceant in the Dominican Republic on a phone he used there.

17

Gleason should have explained that money Dorceant made on selling his Infinity SUV was used for a house not to buy drugs and should have gotten video tapes from TSA to show that when Dorceant went to Boston he was not internally smuggling drugs.  These matters are remote and inconsequential in light of the overwhelming evidence of Dorceant's guilt that was presented at trial.

### 5.  Summary

Attorney Gleason appropriately did not raise at trial any of the exculpatory or impeachment evidence that Dorceant cites.  At best, the cited evidence would have been insignificant, making a decision not to introduce the evidence well within the realm of objectively reasonable representation.  Further, the absence of the evidence could not have prejudiced Dorceant's defense.

### B.  Evidence of Dorceant's Prior Drug Smuggling Activity

During the criminal trial, the prosecution introduced evidence that in October of 2008, Mally and Dorceant had engaged in a separate drug smuggling operation in which they swallowed capsules containing drugs in the Dominican Republic and Dorceant smuggled the drugs, internally, to Boston.[8]  Dorceant contends that Attorney Gleason's representation was ineffective because he

---

[8]Mally apparently stopped in Puerto Rico.

did not object to that evidence as inadmissible under Federal
Rule of Evidence 404(b).[9]  Dorceant acknowledges that Rule 404(b)
evidence is often admissible in conspiracy cases but argues it
should have been objected to and excluded in this case because
the government failed to provide notice as required under Rule
404(b)(2), the evidence lacked special relevance, and any
probative value was outweighed by the danger of unfair prejudice.

Dorceant provides no evidence that the prosecutor failed to
give notice as required by Rule 404(b)(2).  Therefore, any claim
that Attorney Gleason provided ineffective assistance because he
did not object to the prior drug smuggling evidence on the ground
that the prosecutor failed to provide notice is based on mere
speculation.

"Rule 404 bans evidence of a person's other crimes, wrongs,
or acts to show a propensity to act in a particular way" but such
evidence is admissible to show "'motive, opportunity, intent,
preparation, plan, knowledge, identity, absence of mistake, or
lack of accident.'"  United States v. Rodriguez-Soler, --- F.3d -

---

[9]In raising the Rule 404(b) claim, Dorceant appears to have
copied verbatim that part of the amended petition filed on his
behalf by his former counsel (document no. 31) that addressed
this issue, including the references to "undersigned counsel."
The amended petition was struck at Dorceant's request and is no
longer part of the record in this case.  Dorceant lacks any
evidence to support the matters that were addressed by
"undersigned counsel" in the struck amended petition.

--, 2014 WL 6791374, at \*8 (1st Cir. Dec. 3, 2014) (quoting Rule
404(b)(2)).  In a conspiracy case, evidence of a defendant's
prior bad acts may be admissible to show the co-conspirators'
relationship, <u>United States v. Vizcarrondo-Casanova</u>, 763 F.3d 89,
94 (1st Cir. 2014), as well as the defendant's intent to engage
in the conspiracy and his knowledge of the mechanics of the
conspiracy, <u>United States v. Appolon</u>, 715 F.3d 362, 373 (1st Cir.
2013).  <u>See also</u> <u>United States v. Rodriquez</u>, 215 F.3d 110, 118-19
(1st Cir. 2000) (evidence of similar prior bad act with co-
conspirator admissible to show defendant's knowing and
intentional participation in the charged crimes).

     The evidence that Dorceant previously participated in a
similar smuggling activity with Mally was highly probative that
Dorceant knew Mally, knew the mechanics of smuggling drugs by
swallowing capsules, and did not accidently become involved in
the charged conspiracy.  Further, the probative value of the
evidence far outweighed any danger of unfair prejudice.  <u>See</u> Fed.
R. Evid. 403.  Therefore, an objection to the evidence of the
prior smuggling activity would not have succeeded.  Attorney
Gleason made a reasonable tactical decision not to challenge that
evidence, and Dorceant cannot show any resulting prejudice.

C.  Plea Negotiations and Stipulations

Dorceant notes that his sentence was enhanced because Mally died as a result of the drug smuggling operation.[10]  He contends that Attorney Gleason did not explain to him that the stipulation as to the cause of Mally's death would result in a sentencing enhancement without an opportunity for challenge or that the stipulation would cause such a large increase in his sentencing range.  Dorceant represents that if he had understood the consequences of the stipulation he would have pleaded guilty.

In his declaration, Attorney Gleason explained that Dorceant asserted his innocence of the charged crime throughout the case. Dorceant told Attorney Gleason that while Dorceant was represented by prior counsel the government had offered him an opportunity to plead guilty with a sentence of eighteen years which Dorceant rejected, and Dorceant told Attorney Gleason that he would reject any plea offer.  Attorney Gleason also explained the severe consequences that Dorceant would face as a result of a conviction.  Those statements are confirmed by a letter Attorney Gleason sent to Dorceant on July 21, 2010.  In addition, Dorceant

---

[10]The caption of Section II of the amended motion to vacate states:  "DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO PROPERLY ADVISE HIS CLIENT WITH REGARD TO PLEA NEGOTIATIONS AND ENTERING INTO STIPULATIONS AS TO THE WEIGHT OF THE DRUGS INVOLVED IN THE CASE AND MALLY REDRIGUEZ' [SIC] SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL."  Despite the reference to the stipulation as to the weight of drugs involved in the case, Dorceant does not discuss or even mention that stipulation in Section II.  Therefore, Dorceant did not sufficiently raise a claim arising from the stipulation as to the weight of the drugs to allow review.

acknowledges now that he would not have accepted a plea offer that required a sentence longer than Suero was serving.

In November of 2010, Attorney Gleason explained to Dorceant all of the risks of trial, including the strength of the government's case against him, and that he was likely to face a sentence of approximately twenty years. Attorney Gleason also explained the potential benefits of a plea agreement. Dorceant signed a document on November 30, 2010, in which he acknowledged his understanding from Attorney Gleason's explanations that the evidence against him was likely to result in conviction, that his sentence was estimated at twenty years or more, that a plea could result in a sentence that was less than the mandatory minimum, and other matters pertinent to his case.

On December 1, 2010, Attorney Gleason and the prosecutor discussed a possible plea agreement with a sentence of twelve to fifteen years. Attorney Gleason took notes during the telephone conversation with the prosecutor and wrote to Dorceant the same day. In the letter, Attorney Gleason told Dorceant that a critical development had arisen in his case, explained the plea offer, reviewed the longer sentences imposed on other members of the conspiracy, and stated that Dorceant's mandatory sentence after a trial would likely be twenty-five years. Attorney Gleason met with Dorceant on December 4 and made notes of the meeting. Dorceant refused to consider any plea offer.

Before trial, Attorney Gleason also discussed with Dorceant the stipulations as to the cause of Mally's death and the drug

weight involved.  Attorney Gleason states in his declaration that he believed it would have been a tactical error not to stipulate to the cause of death and the weight of the drugs because of the overwhelming evidence and the lack of a meaningful defense.[11] Indeed, without the stipulations, evidence to prove the cause of death and the amount of drugs would have focused more attention on the unpleasant details of Mally's death and the smuggling operation.  Attorney Gleason also noted that Dorceant insisted on his innocence and that defense theory would conflict with evidence to refute the cause of death and the drug weight.

The record demonstrates conclusively that Attorney Gleason explained the risks of the case to Dorceant and the risks of his choice not to accept a negotiated guilty plea.  Attorney Gleason's stipulations as to the cause of death and the drug weight were appropriate tactical decisions under the circumstances.[12]

---

[11]Dorceant contends in a footnote that Attorney Gleason should not have stipulated to the cause of death because there was evidence that Mally may have died of asphyxiation caused by plastic from the drug capsules rather than from acute cocaine intoxication.  Dorceant does not explain what difference that would have made in his case because he does not dispute that the amount of cocaine was an "independently sufficient cause" of Mally's death nor that the capsules of cocaine were the source of the plastic found in her system.  Burrage v. United States, 134 S. Ct. 881, 892 (2014).

[12]In his affidavit filed in response to the government's objection to the motion to vacate sentence, Dorceant suggests that his sentence was erroneously based on the net weight of the drugs rather than the weight of the pure drug.  The only reference to weight of a pure drug in the amended motion to vacate is footnote 9 which states:  "The structure of 21 USC §

23

D.  Self-Representation

Dorceant asserts that Attorney Gleason provided ineffective assistance of counsel by failing to properly raise his request to represent himself.  Citing Faretta v. California, 422 U.S. 806 (1975), Dorceant faults Attorney Gleason for failing to request a hearing on the issue of self-representation.

A criminal defendant has "an absolute right to self-representation so long as he made his request 'clearly and distinctly prior to the beginning of trial.'"  United States v. Zhen Zhou Wu, 711 F.3d 1, 33 (1st Cir. 2013) (quoting United States v. Noah, 130 F.3d 490, 497 (1st Cir. 1997)).  Once trial has started, however, the right to self-representation is qualified.  Zhen Zhou Wu, 711 F.3d at 33.  During trial, the judge may exercise his discretion in whether to allow a defendant to represent himself.  Noah, 130 F.3d at 497.

Dorceant acknowledges that he raised his right to represent himself "in the midst" of trial by telling Attorney Gleason that he wanted to question some of the prosecution witnesses himself. He concedes that Attorney Gleason raised the issue of self-representation to the judge during trial and represents that

---

841(b) confirms that congress knew how to indicate that the weight of the pure drug was to be used in determining a sentence."  Footnote 9 follows Dorceant's discussion of the stipulation as to the cause of Mally's death and whether he would have accepted a plea agreement if he knew the effect of the stipulation as to the cause of death.  As stated above, Dorceant did not develop a claim of ineffective assistance of counsel arising from the stipulation as to the weight of drugs involved in the case.

after a break Attorney Gleason reported to him that the judge said "no" to his request for self-representation.  Therefore, as Dorceant acknowledges, Attorney Gleason raised the issue of self-representation and the request was denied.

In addition, as Attorney Gleason's declaration and trial notes make clear, Dorceant did not clearly or distinctly indicate that he wanted to represent himself.  Instead, the issue arose briefly with respect to cross-examination of Yomaira, and then Dorceant indicated that he was satisfied with Attorney Gleason's cross-examination and Attorney Gleason's representation in general.  Dorceant has not shown that Attorney Gleason's failure to ask for a hearing on his request for self-representation was ineffective assistance.

### E.   Closing Argument

Dorceant contends that Attorney Gleason provided ineffective assistance by failing to object to part of the prosecutor's closing argument.  In the cited part of the argument, the prosecutor discussed the statements to the police made by Nelly and Yomaira and stated that because the statements were given more than a year apart the witnesses could not have collaborated or influenced each other's statement.  The prosecutor noted that Nelly told the police that she had been taken from Puerto Rico to the Dominican Republic and told them who she was with and what occurred while they were in the Dominican Republic.  The prosecutor represented that Nelly's and Yomaira's statements were

consistent with each other and that those statements were also consistent with Dionaliz's trial testimony when Dionaliz had had no opportunity to review the statements.  Nelly's and Yomaira's statements to the police were not admitted into evidence.[13]

In support of his claim, Dorceant argues that the prosecutor commented on facts that were not in evidence to bolster the witnesses' credibility.  He also contends that the prosecutor erred in representing that the statements were consistent with the witnesses' trial testimony when he contends there were inconsistencies.  The inconsistencies that Dorceant claims exist, however, are at most inconsequential.

The government argues that the prosecutor properly commented on the circumstances that suggested the witnesses did not influence each others' statements and testimony because those circumstances were in evidence.  The government also posits that the jury could conclude, based on common sense, that because the witnesses' trial testimony was not impeached to any significant extent by their prior statements, the statements and testimony were consistent, as the prosecutor stated.  With respect to Nelly's statement, however, the government acknowledges that the prosecutor erred in mentioning specific facts from the statement but argues that a decision not to object was a reasonable tactic and that no prejudice resulted.

---

[13] The statements were used for impeachment on minor points during cross-examination of Nelly and Yomaira.

26

"[I]t is plainly improper for a prosecutor to imply reliance on knowledge or evidence not available to the jury." United States v. Smith, 982 F.2d 681, 683 (1st Cir. 1993).  On the other hand, the prosecutor "may attempt to persuade the jury to draw suggested inferences unfavorable to the defense, as long as the prosecutor's own opinion as to the witness' credibility is not urged on the jury."  Id.  In addition, prosecutors may ask the jury to use its common sense to draw reasonable inferences from the evidence.  United States v. Hernandez, 218 F.3d 58, 68 (1st Cir. 2000).

The prosecutor's remarks during closing in Dorceant's case may have overstepped the boundary between asking for reasonable inferences and implying reliance on facts not in evidence or expressing the prosecutor's own opinion.  In addition, as the government concedes, the prosecutor did discuss facts from Nelly's statement that were not in evidence.  Attorney Gleason did not object to those remarks in the prosecutor's closing.

Whether to object during a prosecutor's closing argument can be a reasonable tactical decision by defense counsel because an objection may emphasize the cited statements and cause additional prejudice to the defendant.  United States v. Winters, 530 F. App'x 390, 398 (5th Cir. 2013); Jaffe v. Brown, 473 F. App'x 557, 559-60 (9th Cir. 2012); Engesser v. Dooley, 457 F.3d 731, 739 (8th Cir. 2006); Johnson v. McGrath, 119 F. App'x 129, 131 (9th Cir. 2004); Lambert v. McBride, 365 F.3d 557, 564 (7th Cir. 2004); Oelsner v. United States, 60 F. App'x 412, 418 (3d Cir.

2003).  In this case, however, Attorney Gleason did not address his failure to object to closing argument.  Therefore, while that decision may have been a reasonable strategy, no facts have been presented to show that to be the case.

Even if Attorney Gleason's failure to object to the cited part of the prosecutor's closing argument were deficient performance, to succeed in showing constitutionally ineffective assistance, Dorceant would have to show prejudice.  Strickland, 466 U.S. at 687.  "In determining prejudice, [the court] look[s] to whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Ortiz-Graulau v. United States, 756 F.3d 12, 17 (1st Cir. 2014) (internal quotation marks omitted).  A reasonable probability, in this context, "is a probability sufficient to undermine confidence in the outcome."  Id.

The evidence at trial of Dorceant's guilt was overwhelming. The prosecutor's misstatements in closing represent a small part of a much larger tapestry when the trial is viewed as a whole.

Further, "[e]ven where the prosecutor's argument goes beyond the direct evidence, the trial court's instructions to the jury may be sufficient to correct any possible prejudice."  United States v. de Leon Davis, 914 F.2d 340, 345 (1st Cir. 1990).  In Dorceant's case, the jury was instructed that "[a]rguments and statements by lawyers are not evidence.  What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not

evidence." The jury was also instructed that "[i]f the facts as you remember them differ from the way the lawyers have stated them, your memory controls." Therefore, the jury was instructed not to consider the prosecutor's closing argument as evidence and not to accept the prosecutor's version of the facts if it differs from the jury's recollection of the facts. The court presumes that the jury followed its instructions. United States v. Range, 771 F.3d 17, 32 (1st Cir. 2014).

The prosecutor's remarks in closing about consistency between the witnesses' statements to the police and their trial testimony and the few details repeated from Nelly's statement are of minor importance in light of the overwhelming evidence of guilt. The remarks are further diminished by the instruction to the jury that the prosecutor's arguments are not evidence. As a result, the lack of an objection to those remarks does not undermine confidence in the jury's verdict. In the absence of prejudice, Dorceant cannot succeed on the claim.


F. "Use" of Cocaine as the Cause of Death

Dorceant argues that Attorney Gleason should have challenged the part of the charges against him that Mally died from the "use" of cocaine. The theory Dorceant raises is that Mally swallowed the capsules of cocaine to transport them not to ingest cocaine for its effects and that swallowing capsules of cocaine for transportation is not "use" of cocaine within the meaning of § 841(b)(2)(B)(ii) and § 960(b)(2)(B)(ii). Dorceant cites no

authority to support his interpretation of the applicable statutes.

Whether or not Dorceant's new statutory interpretation would have merit in an appropriate context, it fails here.  As Dorceant concedes, his co-conspirator, Baez-Gil, raised the same claim in support of his § 2255 motion, and the court concluded that Baez-Gil's counsel was not constitutionally ineffective for failing to make the novel argument during his criminal case. Angel Baez-Gil v. United States, Civil No. 12-cv-266-JL, Op. No. 2013 D.H. 083 (D.N.H. June 4, 2013).  For the reasons explained in Baez-Gil, Attorney Gleason's representation of Dorceant was not constitutionally ineffective because he failed to challenge the interpretation of "use" in the context of internal smuggling activities.

### G.   Illegally Seized Evidence

Based on an incident report submitted by Dorceant with his amended motion to vacate sentence, Det. Sgt. Fitzgerald and Det. Mark J. Donahue drove to the Massachusetts Office of the Medical Examiner in Boston to retrieve items recovered during the autopsy of Mally Rodriguez Cruz.  The items retrieved were forty-two individually wrapped packages of cocaine, along with smaller pieces of plastic and rubber.  Dorceant contends that no search warrant was issued for the capsules of cocaine that were removed from Mally's stomach during the autopsy and were then taken by the officers.  He argues that Attorney Gleason was ineffective in

failing to move to suppress that evidence, which Dorceant
contends was illegally seized without a warrant.

The government responds that it is not ineffective
assistance not to move to suppress when the motion would have
been denied.  In support, the government points out that the
drugs were taken from Mally's stomach and that whether or not
Dorceant had an ownership interest in the drugs, he had no
expectation of privacy in the contents of Mally's stomach.

A claim of ineffective assistance of counsel due to failure
to file a motion to suppress requires an initial showing that the
motion to suppress would have succeeded.  See Kimmelman v.
Morrison, 477 U.S. 365, 375 (1986).  The Fourth Amendment
protects against unreasonable searches and seizures.  United
States v. Awer, 770 F.3d 83, 90 (1st Cir. 2014).  "The Fourth
Amendment's protection against unreasonable searches may only be
claimed where a defendant demonstrates that he or she personally
has a reasonable expectation of privacy in the place searched."
United States v. Almeida, 748 F.3d 41, 47 (1st Cir. 2014)
(internal quotation marks omitted).  A compelled physical
intrusion into an individual's body implicates his "'most
personal and deep-rooted expectations of privacy.'"  Missouri v.
McNeely, 133 S. Ct. 1552, 1558 (2013) (quoting Winston v. Lee,
470 U.S. 753, 760 (1985)).  For that reason, a warrant is
required for an intrusion into an individual's body unless an
exception applies.  McNeely, 133 S. Ct. at 1558-59.

The intrusion at issue here is the autopsy on Mally's body. No intrusion was made into Dorceant's body.  Dorceant had no expectation of privacy in Mally's body.  Therefore, he lacked standing to challenge the search that was done during the autopsy and the seizure of the drugs found in Mally's stomach.  <u>See</u> <u>United States v. Kuespert</u>, 773 F.2d 1066, 1068 (9th Cir. 1985); <u>United States v. York</u>, 578 F.2d 1036, 1041 (5th Cir. 1978). Because a motion to suppress the evidence found and seized would have been unsuccessful, Dorceant has not shown deficient representation or prejudice.

<u>Conclusion</u>

For the foregoing reasons, Luckenson Dorceant's amended motion to vacate sentence (document no. 49) is denied.  The case is dismissed.

As Dorceant has not made a substantial showing of the denial of a constitutional right, the court declines to issue a certificate of appealability.  <u>See</u> 28 U.S.C. § 2253(c)(2).

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

February 13, 2015

cc:  Luckenson Dorceant, pro se
     Seth R. Aframe, Esq.